UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
FILED
APR 2 2 2005
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-CV-138-JMH

WILL L. McGINNIS, III     PLAINTIFF

VS:     **MEMORANDUM OPINION AND ORDER**

COMMONWEALTH OF KENTUCKY, ET AL.     DEFENDANTS

Plaintiff, Will L. McGinnis, an individual who lists his address as P.O. Box 22015, Lexington, Kentucky, 40522, has filed a *pro se* civil rights complaint alleging violations of 42 U.S.C. §1983. He has paid the $250.00 filing fee.

The Court screens this non-prisoner, fee-paid complaint under the authority of *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). *Apple v. Glenn* permits a district court to conduct a limited screening procedure and to dismiss, *sua sponte*, a fee-paid complaint filed by a non-prisoner if it appears the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Id.* at 479 (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). *Sua sponte* dismissal is also appropriate where claims lack "legal plausibility necessary to invoke federal subject matter jurisdiction." *Apple v. Glenn*, 183 F.3d at 480. Under these circumstances, amendment would not be permitted, after dismissal, to cure such defects.

DEFENDANTS

The defendants are: (1) the Commonwealth of Kentucky; (2) Judge Kevin M. Horne; and (3) Prosecuting Attorney Robert J. Stokes.

## ALLEGATIONS OF THE COMPLAINT

On October 21, 2003, the plaintiff was stopped by a Lexington police officer who issued a citation to him for violating K.R.S. 189.120. This charge came about because the plaintiff allegedly backed his car down an entrance ramp onto Interstate 75 in Fayette County. The plaintiff pled not guilty, asked for a jury trial, and proceeded *pro se*.

On January 23, 2004, the plaintiff had a jury trial in the Fayette District Court before Judge Kevin Horne. Defendant Robert J. Stokes prosecuted the case. Two police officers testified they had seen the plaintiff back his vehicle down the entrance ramp. Apparently, the plaintiff represented during testimony that he had a clean driving record. Judge Horne, who apparently had researched the matter, advised the jury of the plaintiff's prior traffic offenses.

Judge Horne instructed the jury on the charged offense of Reckless Driving in violation of K.R.S. 198.120. Judge Horne also instructed the jury on what he apparently thought was the lesser included offense of "Operating a Motor Vehicle Contrary to Law" in violation of K.R.S. §189.244. The plaintiff alleges that Judge Horne's jury instructions on the K.R.S. §189.244 charge failed to set forth the either the definition or elements of the crime, or other explanatory language.

The jury found the plaintiff not guilty of having violated K.R.S. §198.120 (Reckless Driving). The jury did find the plaintiff guilty of having violated K.R.S. §189.244 (Operating a Motor Vehicle Contrary to Law). Judge Horne imposed a $500.00 fine and court costs of $120.00. Judge Horne ordered the plaintiff either to pay the fine by January 28, 2004, or to appear in District Court at 2:30 p.m. on that date. The plaintiff promptly filed a notice of appeal in the Fayette Circuit Court. The plaintiff alleges he appeared in court at 2:30 p.m. on January 28, 2004, and informed Judge Horne that he had not paid the fine. The plaintiff's argument was that because he had appealed the fine,

2

he was not required to pay it until the appeal was resolved.

The plaintiff alleges that Judge Horne disagreed with the plaintiff's argument. He asserts that when he (plaintiff) then offered to obtain the fine money and pay the fine at that time, Judge Horne set aside the fine and ordered the plaintiff to serve five days in the Fayette County Detention Center. The plaintiff claims that he was the only person appearing before the Judge on that date who was not permitted to obtain fine money and pay the fine then and there.

On September 29, 2004, Fayette Circuit Judge Lewis Paisley ruled on the plaintiff's appeal. Judge Paisley noted that K.R.S. §189.244 prohibits a person from permitting another person to operate a vehicle contrary to law, and that there was no evidence the plaintiff was permitting anyone else to operate his vehicle. Judge Paisley concluded that because the evidence established that the plaintiff was operating his vehicle, there was no evidentiary basis upon which to convict the plaintiff of having violated K.R.S. §189.244.

Additionally, the plaintiff complained on appeal that the trial court wrongfully assumed the role of prosecutor when it *sua sponte* advised the jury of the plaintiff's past traffic offenses. Judge Paisley ruled that when the trial court researched the plaintiff's driving record and advised the jury of the plaintiff's prior traffic offenses, it crossed over into the role of prosecutor. Judge Paisley described the trial court's actions in this regard as "clearly improper." He vacated the trial court's judgment and remanded the proceeding for the entry of an order dismissing the criminal charges.

## CLAIMS

The plaintiff alleges that actions of both the prosecutor and Judge Horne violated: (1) his Fifth Amendment due process rights; (2) his Eighth Amendment right to be free from protection against cruel and unusual punishment; and (3) his Fourteenth Amendment entitlement to due process

3

and equal protection.

## DISCUSSION
### 1. Claims Against Prosecutor Robert J. Stokes

The plaintiff brings his allegations of constitutional violations against Prosecutor Stokes for having "prosecuted" the purportedly lesser included offense, K.R.S. §189.224, upon which Judge Horne instructed the jury. The plaintiff's claims against Prosecutor Stokes fail for two reasons.

First, from the pleadings and exhibits it appears that Prosecutor Stokes had no role in either of the actions about which the plaintiff complains: Judge Horne's inclusion of the jury instruction under K.R.S. §189.224, and Judge Horne's decisions not to allow the plaintiff to pay his fine on January 28, 2005, and to impose a five-day jail sentence on that date. "When monetary damages are sought under section 1983 . . . a showing of some personal responsibility of the defendant is required." *Johnson v. Glick*, 481 F.2d 1028, 1034 (2nd Cir. 1973). A plaintiff must prove that a particular defendant was personally involved in the deprivation of his rights. *Id.* Liability will lie only where it is affirmatively shown that the official charged personally deprived the plaintiff of his rights.

A plaintiff must demonstrate that the defendant proximately caused his alleged injuries. *White v. Gerbitz*, 892 F.2d 457, 463 (6th Cir. 1989). "[A] violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Horn v. Madison Cty. Fiscal Ct., et al.*, 22 F.3d 653, 659 (6th Cir. 1994) (citing *Doe v. Sullivan County, Tennessee*, 956 F.2d 545, 550 (6th Cir. 1992), *cert. denied*, 113 S.Ct. 187 (1992); *see also Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 305-308 (1986)).

Second, a prosecutor enjoys absolute immunity from suit under §1983 when the complained-of activity is "intimately associated with the judicial phase of the criminal process" or is performed in a "quasi-judicial" role. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). Absolute immunity attaches to a prosecutor's actions which clearly involve his or her "role as advocate for the State," *see* 424 U.S., at 431, n.33. The plaintiff alleges no facts indicating that Stokes engaged in actions outside of his role as "advocate for the State." *Id.*

Accordingly, the plaintiff has failed to state a claim against Stokes upon which relief can be granted. The claims against Stokes are therefore dismissed with prejudice. *Apple v. Glenn*, 183 F.3d at 479; Fed.R.Civ.P. 12(b)(6).

### 2. Claims Against Judge Kevin Horne

For the reasons set forth below, all of the plaintiff's claims against Judge Kevin Horne must be dismissed under the doctrine of judicial immunity.

#### A. Inclusion of "Lesser Included" Offense Jury Instruction; Imposition of Fine Pending Appeal; and Refusal to Accept Payment of Fine on January 28, 2005

The plaintiff complains that Judge Horne: (1) wrongfully included a "lesser included offense" (in his jury instructions) which was not a lesser included offense (K.R.S. §189.224); (2) wrongfully failed to advise the jury of the elements of a K.R.S. §189.224 offense; (3) wrongfully required payment of the fine while the case was on appeal; and (4) wrongfully refused to permit the plaintiff to leave the Fayette District Court on January 28, 2005, the day the fine was due, in order to obtain the funds with which to pay the fine when all others were allegedly permitted to do so.

5

Judges are absolutely immune from suit for a deprivation of civil rights brought under 42 U.S.C. §1983 if the complained-of act was not taken in the clear absence of all jurisdiction, and if the complained-of act was a judicial act (*i.e.*, the function was normally one performed by a judge and the parties dealt with the judge in his or her judicial capacity). *See Pierson v. Ray*, 386 U.S. 547, 553-555 (1967); *see also Stump v. Sparkman*, 435 U.S. 349, 356-362 (1978). Absolute judicial immunity exists for "those acts which are truly judicial acts. . . ." *Morrison v. Lipscomb*, 877 F.2d 463, 467-68 (6th Cir. 1989) (citing *Forrester v. White*, 484 U.S. 219 (1988)), and is not diminished even if the judge's exercise of authority is flawed or is in error. *Id.*, 435 U.S. at 359.

"[A]bsolute immunity is not available if the alleged wrongful conduct was committed pursuant to a non-judicial act, *i.e.*, one not taken in the judge's judicial capacity, such as terminating an employee." *Cameron v. Seitz*, 38 F.3d 264, 272 (6th Cir. 1994) (citing *Forrester v. White*, 484 U.S. 219, 229-30, 108 S.Ct. 538, 545-46 (1988)). In *Stump*, the Supreme Court established a two-prong test to determine whether an act is "judicial." *Id.* at 362, 98 S.Ct. 1099.

First, the Court must consider whether the act in question is a function that is "normally performed by a judge." *Id.* The Sixth Circuit has previously referred to this inquiry as the functional approach. Under this inquiry, a court is required to examine the nature and function of the act, not the act itself. The Supreme Court reformulated this inquiry in *Mireles v. Waco*, 502 U.S. 9 , 11-12 (1991) (per curiam), holding that even if a particular act is not a function normally performed by a judge, the court must look to the particular act's relation to a general function normally performed by a judge. *Id.* at 13, 112 S.Ct. 286.

Second, in determining whether an act is "judicial," the court must assess whether the parties dealt with the judge in his or her judicial capacity. *Id.* at 12, 112 S.Ct. 286. In examining the

6

functions normally performed by a judge, this Court has recognized that "paradigmatic judicial acts," or acts that involve resolving disputes between parties who have invoked the jurisdiction of a court, are the touchstone for application of judicial immunity. *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir.1997) (citing *Antoine*, 508 U.S. at 435-36, 113 S.Ct. 2167). Conversely, whenever an action taken by a judge is not an adjudication between the parties, it is less likely that it will be deemed judicial. *Cameron v. Seitz*, 38 F.3d at 271.

In the instant proceeding, the plaintiff does not allege that Judge Horne engaged in the complained-of actions in a non-judicial capacity. The essence of his complaint is that in Judge Horne's capacity as the presiding judge, he acted improperly. The Court concludes that Judge Horne was clearly acting within his jurisdiction by presiding as the Fayette District Judge in a misdemeanor criminal proceeding, which was initiated by the Fayette County Attorney's Office. He was clearly acting within his judicial capacity as presiding judge and performing "truly judicial acts"--which involved the resolution of the dispute between the Commonwealth of Kentucky and the plaintiff--when he instructed the jury on what he believed was an appropriate lesser included offense under K.R.S. §189.224, and when he failed to advise the jury of the elements of a K.R.S. §189.224 offense. The approval and submission of instructions to a jury is a "truly judicial act."

The Court concludes that Judge Horne was also clearly acting within his judicial capacity, and performing "truly judicial acts," when he required the plaintiff to pay the fine while the case was on appeal. The Court reaches the same result as to Judge Horne's decision to deny the plaintiff's request to leave the Fayette District Court on January 28, 2005, the day the fine was due, in order to obtain the funds with which to pay the fine. All of these actions and rulings were exercises of judicial authority, whether or not they may have been procedurally correct. A judge's rulings on

7

motions, even if they are detrimental to a litigant's case, constitute judicial action and are thus protected by judicial immunity. *Stump*, 485 U.S. at 363 (disagreement with action taken by judge does not deprive him of judicial immunity). *See also Clark v. Taylor*, 627 F.2d 284 (D.C. Cir. 1980). "Disagreement with the action taken by the judge . . . does not justify depriving that judge of his immunity." *Stump*, 485 U.S. at 363.

While the plaintiff now has the benefit of hindsight by reason of Judge Paisley's ruling, which states that the inclusion of a charge under KRS 189.224 was in error, the Supreme Court has determined that even the commission of grave procedural errors, including those involving due process, do not constitute judicial action taken in the clear absence of all jurisdiction. *Stump*, 435 U.S. at 359. *See also Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984), in which the Sixth Circuit held that a judge's failure to inform the plaintiff of his constitutional rights, though a grave procedural error, did not subject him to damages. *See also Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S.Ct. 286 (1991) (per curiam) (immunity is available even if a judge acts erroneously, corruptly, or in excess of his jurisdiction).

The Court construes the assertion that Judge Horne conspired with the prosecutor to violate his (plaintiff's) rights as a claim that Judge Horne performed his judicial function in bad faith, or a malicious or corrupt manner. Such a claim is without a legal basis. In *McArdle v. Tronetti*, 961 F.2d 1083 (3d Cir. 1992), the court addressed a similar claim and noted:

> [I]f persons are immune from Section 1983 liability for their acts by virtue of their function in the judicial process they must be immune from Section 1983 liability for conspiring to do those acts. (citing *See*, e.g., *John V. Barron*, 897 F.2d 1387, 1392 (7th Cir.), cert. denied, 112 L. Ed. 2d 43, 111 S.Ct. 69 (1990); *Moses v. Parwatikar*, 813 F.2d 891 (8th Cir.), *cert. denied*, 484 U.S. 832, 98 L.Ed.2d 67, 108 S.Ct. 108 (1987); *Ashelman v. Pope*, 793 F.2d 1072, 1077-1078 (9th Cir. 1986); *Dykes v. Hosemann*, 776 F.2d 942, 946 (11th Cir. 1985); *Holloway v. Walker*, 765 F.2d 517,

8

522, (5th Cir.), cert. denied, 474 U.S. 1037, 88 L.Ed.2d 583, 106 S.Ct. 605 (1985)). Otherwise, judges, prosecutors, witnesses and others "on mere allegations of conspiracy or prior agreement, could be hauled into court and made to defend their judicial acts, the precise result judicial immunity was designed to avoid."

*McArdle v. Tronetti*, 961 F.2d at 1085.

Judicial action, even if done maliciously, or even if it was in excess of his or her authority, will not subject a judge to liability. *See Pierson v. Ray*, 386 U.S. 547 at 554 (1967) (citing *Bradley v. Fisher*, 80 U.S. 335 (1872)); *Stump* at 485 U.S. 356-357; *Mireles v. Waco*, 502 U.S. at 11-12, 112 S.Ct. at 287 ("Although unfairness and injustice to a litigant may result on occasion," a judge must be able to exercise his judicial authority "without apprehension of personal consequences to himself.") (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872)); *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991) (fact that judge was alleged to have acted in a conspiracy and committed grave procedural errors was insufficient to avoid absolute judicial immunity).

Based upon this case law, the Court determines that judicial immunity clearly shields Judge Horne from liability as to these claims. The Court dismisses these claims with prejudice.

### B. <u>Obtaining Plaintiff's Driver's Record And Informing Jury of Record</u>

The plaintiff alleges that Judge Horne stepped outside the role of judge and into the role of prosecutor by researching and advising the jury of the plaintiff's prior driving offense record. He alleges that such action removes the cloak of judicial immunity.

While somewhat of a closer case than the previously discussed claims, the Court determines that judicial immunity still protects Judge Horne's actions from liability. The Sixth Circuit has previously recognized that the initiation of accusatory processes such as criminal prosecutions is not

a function normally performed by a judicial officer. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1984). Relying on *Barnes v. Winchell*, 105 F.3d 1111, 1118-19 (6th Cir. 1987), the Sixth Circuit has subsequently explained, however, that this exception to absolute immunity is a narrow one and that "even if a judge encroaches upon prosecutorial functions, the broad shield of absolute judicial immunity is not automatically overcome." *Johnson v. Turner*, 125 F.3d 324, 333-24 (6th Cir. 1997).

The Court is guided by, and finds persuasive, the holding of *Barnes v. Winchell*, 105 F.3d 1111, which discussed numerous cases involving allegations that a judge either initiated criminal proceedings, or took other actions alleged to have been prosecutorial in nature. Most of those cases held that the judge was protected by prosecutorial immunity.

In *Barnes*, the Sixth Circuit discussed the distinctions between purely prosecutorial and judicial functions. *Barnes* held that Judge Winchell, the defendant, was performing a judicial act when he assisted individuals who were before him as litigants in preparing their complaint against Barnes. *Id.*, 105 F.3d at 1119. The court further held that Judge Winchell was not motivated by private interests, did not single-handedly initiate criminal charges against persons who did not have a case pending before him, and then subsequently pass judgment upon such charges. *Id.*

One of the cases which the *Barnes* court examined, and upon which it relied to a large extent, was the Eleventh Circuit's decision in *Harris v. Deveaux*, 780 F.2d 911, 916 (11th Cir.1986). *Harris* held that a judge did not lose immunity for directing the entry of charges against a witness who appeared before the judge in a pending case.

In *Harris*, Municipal Court Judge Clinton Deveaux presided over a preliminary hearing against Phillip Jones, who had been charged with rape and false imprisonment. During the hearing, evidence was presented indicating that Stephanie Harris, the victim, had robbed Jones. Although

the prosecutors objected, Judge Deveaux insisted that Harris be charged with armed robbery. He also ordered a detective to arrest her. Judge Deveaux indicated to the prosecutor that he would release Harris on her own recognizance if he would agree to the same reduction for Jones. The prosecutor refused. However, when Harris later appeared before Judge Deveaux, he learned that she had been released on her own recognizance. At that time, Judge Deveaux reduced the charge against Jones and released him on his own recognizance. The Eleventh Circuit concluded that Judge Deveaux's actions, although unusual, were judicial in nature and that he should be afforded immunity for his actions which "arose out of judicial proceedings brought before him by independent parties." *Barnes*, 105 F.3d at 1118 (quoting *Harris*, 780 F.2d at 915).

The instant proceeding involves somewhat analogous facts. It appears from the facts as alleged by the plaintiff that Judge Horne doubted the veracity of the plaintiff's allegation, under oath, that he (plaintiff) maintained a perfect driving record prior to the incident on I-75. Hence, Judge Horne requested and independently obtained the plaintiff's driving record, which revealed that the plaintiff did not, in fact, have a perfect driving record. Judge Horne informed the jury of that fact.

*Barnes* held that when a judge initiates proceedings based on his private interests, separate and apart from the cases independently brought to him for adjudication, judicial immunity will not protect the judge. *Barnes*, 105 F.3d at 1118.[1] In the instant case, however, there is no indication from the facts, as alleged by the plaintiff, that Judge Horne stood to gain personally or to advance any personal interest by demonstrating to the jury that the plaintiff had blatantly misrepresented his driving record to them.

---

[1] In support of this principle, the Sixth Circuit in *Barnes* relied on *Harris* and its previous decision in *Sevier* v. *Turner*, 742 F.2d 262 (6th Cir.1984), which will be discussed, *infra*.

*Barnes* also discussed and distinguished its prior decision in *Sevier v. Turner*, 742 F.2d 262, from the holding in *Harris* that judicial immunity applied. In *Sevier*, Kenneth Turner, a county juvenile court judge, had the authority to collect delinquent child support payments. In an attempt to collect these payments, he instructed his staff to initiate criminal prosecutions against those fathers in arrears. He then used those impending criminal actions as leverage to obtain consent orders. Notably, Judge Turner received part of his salary from these payments. Accordingly, Judge Turner was denied immunity from suit.

In distinguishing the two cases, the *Barnes* court noted that in *Sevier*, Judge Turner initiated charges, not as a result of a case brought before him by the parties, but as a result of events in his private, non-judicial life; that is, events in which he had a personal stake. *Barnes*, 105 F.3d at 1118. *Barnes* noted, however, that in *Harris*, Judge Deveaux was entitled to judicial immunity for his actions which "arose out of judicial proceedings brought before him by independent parties." *Barnes*, 105 F.3d at 1118 (quoting *Harris*, 780 F.2d at 915).

In the instant proceeding, Judge Horne is protected by judicial immunity. There is no question that Judge Horne's actions clearly "arose out of judicial proceedings brought before him by independent parties." *Barnes*, 105 F.3d at 1118. There is nothing in the complaint to indicate that Judge Horne's actions in obtaining the plaintiff's driving record and producing it to the jury were precipitated by any events in his (Judge Horne's) personal life or by issues in which he (Judge Horne) had a personal stake. Rather, his actions appear to have been motivated by ensuring that justice was not obstructed by false testimony to the jury: to wit, that the plaintiff had a perfect driving record.

The Court finds two other cases discussed in *Barnes* relevant to the issue of a judge's duty to preserve the integrity of the judicial system by taking actions to prevent the obstruction of justice. The first case, *Barrett v. Harrington*, 130 F.3d 246 (6th Cir.1997), addressed the issue of whether the initiation of criminal proceedings against an individual constituted a judicial act.

Barrett was the owner of a roofing business that was "involved in an ongoing controversy with the Department of Codes Administration of the Metropolitan Government of Nashville and Davidson County regarding work permits for various projects." *Id.* at 249. In September 1994, Barrett appeared before Nancy Harrington, a Metropolitan General Session Judge of Nashville and Davidson County, to answer two violations of the Environmental Codes. At the conclusion of the bench trial, Judge Harrington ruled against Barrett and he became enraged. Barrett then decided to investigate Judge Harrington and, in doing so, he discovered that she had previously dismissed parking tickets that had been issued to her and her husband. Barrett also made threatening remarks about Judge Harrington to court employees, who advised Judge Harrington that she should be concerned for her safety.

In response, Judge Harrington wrote letters on her judicial letterhead to the state district attorney urging him to investigate Barrett because he was "attempting to obstruct justice by harassing [her] and [her] family." *Id.* Judge Harrington was also concerned that Barrett was attempting to set up a situation in which she would have to recuse herself from future cases against him, which "were likely to arise due to his ongoing dispute with the Codes Department." *Id.*

In concluding that absolute immunity shielded Judge Harrington from liability for her actions in writing letters to the prosecutors that prompted the investigation of Barrett, the court found that she was attempting "to protect the integrity of the judicial decision-making process." *Id.* at 259. The

court noted that, "just as a judge's citation for contempt against a party who obstructs justice is a judicial act taken to preserve integrity of the judicial system, so too is the instigation of criminal proceedings against a disgruntled litigant whose conduct may amount to obstruction." *Id.* (emphasis added). Importantly, the court noted that it made no difference whether Barrett's alleged obstruction occurred inside or outside the courtroom. Rather, the fact that Judge Harrington believed Barrett's actions amounted to obstruction of justice in relation to her role as a judge imposed the duty to report such actions to the proper authorities. *See Barrett*, 130 F.3d at 259.[2]

The Court concludes that in the instant action, Judge Horne's actions were motivated by a good faith desire to have facts truthfully presented to the jury in light of the plaintiff's complete misrepresentation about his driving record. In sum, the Court interprets Judge Horne's actions in this regard as an attempt to preserve the integrity of the judicial system, which action is protected by judicial immunity under the rationale of *Barrett*.

Finally, the Sixth Circuit issued a published opinion on November 18, 2004, involving a probate judge alleged to have engaged in prosecutorial conduct. The issue was whether a probate judge could invoke judicial immunity when he swore out a criminal complaint against a person who had falsified information about his legal gender on his marriage license application in the probate

---

[2]

In reaching this conclusion, the *Barrett* court relied upon the logic from *Martinez v. Winner*, 771 F.2d 424 (10th Cir.1985) (vacated and remanded on other grounds in *Tyus v. Martinez*, 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 333 (1986) and reversed in part by *Martinez v. Winner*, 778 F.2d 553 (10th Cir.1985)). In that case, the Tenth Circuit addressed the scope of judicial immunity regarding actions taken by Fred Winner, (then) the Chief Judge of the United States District Court for the District of Colorado. Judge Winner was the presiding judge over Francisco Martinez's criminal case. The relevant issue in Martinez concerned whether Judge Winner was entitled to immunity for writing letters to the Justice Department and other law enforcement officials in which he accused Francisco Martinez of being a catalyst for bringing together terrorist groups and attempting to obstruct justice by collaborating with spectators to intimidate the jury. The court concluded that Judge Winner was entitled to immunity for writing these letters because he "had a duty to notify the proper authorities if he felt a crime was being committed in his courtroom." *Barrett*, 130 F.3d at 258 (citing *Martinez*, 771 F.2d at 435).

court office. *See Brookings v. Clunk*, 389 F.3d 614, 620-21 (6th Cir. 2004).[3]

The Sixth Circuit noted that in order to determine whether the action was judicial, it was required to examine the nature and function of the action, not the act itself. Citing *Barnes*, 105 F.3d at 1116, and *Mireles*, 502 U.S. at 12-13, the court further noted that even if the particular act is not a function normally performed by a judge, it may constitute a judicial act if it relates to a general function normally performed by a judge.

The *Brookings* court determined that the probate judge was entitled to absolute judicial immunity from civil rights liability, because the action of initiating criminal proceedings constituted a judicial act. The court determined that the judge had an obligation to report that a crime had been committed in his court. *Id.* at 622.

To the extent that Brookings, the plaintiff, had specifically alleged that Judge Clunk had "twisted the arms of the prosecutor" to get the case against him prosecuted, the Sixth Circuit held that such action "does not transform the act [of initiating criminal charges against Brookings] into one that is not covered by judicial immunity." *Id.* The court characterized the judge's action in initiating a criminal proceeding as one intended to stop the plaintiff's repeated attempts to fraudulently obtain marriage licenses. The Court concluded that such action: (1) arose directly from information provided to the judge in his judicial capacity; (2) was not performed without any jurisdiction to do so; and (3) was a legitimate effort to protect the integrity of the judicial system.

Applying the rationale of *Brookings v. Clunk* to the actions of Judge Horne in the instant proceeding, the Court concludes that judicial immunity protects Judge Horne against the plaintiff's claims concerning the production of his driving record. The plaintiff had falsely represented the

---

[3] This opinion was rendered by Judge Danny C. Reeves, district judge for this Court.

content of his driving record to the jury. As in *Brookings*, this Court finds that Judge Horne's actions to remedy the plaintiff's misrepresentations: (1) arose directly from information provided to the judge in his judicial capacity; (2) was not performed without any jurisdiction to do so; and (3) was a legitimate effort to protect the integrity of the judicial system. These claims, and any related allegations of conspiracy to violate the plaintiff's constitutional rights, are dismissed as frivolous.

### 3. Claims Against Commonwealth of Kentucky

To the extent that the plaintiff asserts claims for damages from the Commonwealth of Kentucky, his claims lack merit and must be dismissed with prejudice. The Eleventh Amendment bars a suit against a state or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir.1992). Claims against either entity are dismissible under the Eleventh Amendment, which states as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any foreign State.

U.S. Const., Amend. XI.

Accordingly, by the clear language of the Amendment, a lawsuit against a state cannot proceed in federal court. *See Hans v. Louisiana*, 134 U.S. 1, 11-20 (1890) (recounting the history of the Eleventh Amendment's ratification); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (even though a state is not named a party, suit may nonetheless be barred by the Eleventh Amendment if it is somehow deemed to be against the state). *See also DLX, Inc. v. Kentucky*, 381 F.3d 511, 527-28

(6th Cir. 2004) (Eleventh Amendment barred Fifth Amendment takings claim against Commonwealth of Kentucky filed in federal district court).

To the extent the plaintiff alleges that " the Commonwealth of Kentucky is responsible for the negligent acts of its officers," [Complaint, Count III], it appears that he is contending that the Commonwealth of Kentucky is liable to him under the theory of *respondeat superior*. His assertion is patently incorrect; the theory of *respondeat superior* cannot provide the basis for liability in a §1983 action. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir.1996); *Bellamy v. Bradley*, 729 F .2d 416, 421 (6th Cir.1984).

The allegations against the Commonwealth of Kentucky are dismissed with prejudice for failure to state a claim upon which relief can be granted.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** that this action is **DISMISSED**, *sua sponte*, and judgment shall be entered contemporaneously with this memorandum opinion in favor of the defendants.

This the 22d day of April, 2005.

/s/ Joseph M. Hood
JOSEPH M. HOOD, JUDGE

Date of Entry and Service: